UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MICHAEL D. GOINS, ) | Civil Action No.: 4:13-cv-1269-RMG-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| LT. HORNE, CPL. JAMES BYRD, OFC. ) | |
| SEWELL, and OFC. LINDSEY, each in ) | |
| his individual and official capacities; ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**I.    INTRODUCTION**

Plaintiff, who is proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983. He also asserts state law causes of action for gross negligence and negligent supervision. Plaintiff challenges the use of "strip searches" at Perry Correctional Institution as violative of his right to be free from cruel and unusual punishment and unreasonable searches and as violative of his due process rights. Presently pending before the Court are Plaintiff's Motion for Preliminary Injunction/Temporary Restraining Order (Document # 28), Plaintiff's Motion for Relief (Document # 48) and Defendants' Motion for Summary Judgment (Document # 63). Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendants' Motion for Summary Judgment, could result in dismissal of his Complaint. The undersigned granted Plaintiff two extensions of time to respond to Defendants' motion. Plaintiff has not filed a Response. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because these motions are potentially dispostive, this Report and Recommendation in entered for review by

the district judge.

## II. FACTS

The facts in this case are largely not in dispute. In his Complaint, Plaintiff alleges that while housed in SMU in October of 2012[1], he was "strip searched" and required to "tak[e] off my SMU Jumpsuit, socks, shoes & boxers, [and] hand[] them to Cpl. Byrd to search. Byrd then asked me to lift my testicles, open my mouth, lift my tongue, hold my hands up and twist my hands around, turn around squat, cough, then bend over at the waist and spread my buttocks apart." Complaint p. 4. Defendants do not dispute that this is the strip search method they use for SMU inmates. See Horne Aff. ¶¶ 4-7; Byrd Aff. ¶¶ 3-6; Sewell Aff. ¶¶ 3-4; Lindsey Aff. ¶¶ 2-4. Specifically, they aver that prior to leaving the cell, a SMU inmate must remove all his clothing and pass it through the food flap, extend arms out and rotate that from palm up to palm down, raise his arms to allow the officer to see his armpits, lift his scrotum so the area can be viewed, turn around, raise both feet, spread his toes, squat, spread buttocks apart and cough, and open his mouth and move his tongue up and down and side to side. The inmate may then put his clothes back on. Id. Defendants further aver that this procedure is used as a security measure due to the higher security threat posed by SMU inmates. Lindsay Aff. ¶ 2; Sewell Aff. ¶ 5; Byrd Aff. ¶¶ 7-8; Horne Aff. ¶¶ 2-4, 8.

## III. MOTION FOR PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER

In this motion Plaintiff seeks an order enjoining Defendants from using the complained of strip search procedure. "A plaintiff seeking a preliminary injunction must establish that he is likely

---

[1] Plaintiff also complains of similar conduct in 2009. However, the applicable statute of limitations bars these claims. Wilson v. Garcia, 471 U.S. 261 (1975) (since Congress did not establish a statute of limitations for § 1983, state tort law limitations statute apply); S.C. Code Ann. §15-3-530 (providing for a general three year statute of limitations).

to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 129, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008). All four requirements must be met. Id.

Strip searches such as those complained of by Plaintiff have been held to be within constitutional bounds. See Nelson v. South Carolina Dep't of Corrections, 2013 WL 4522788, *5 (D.S.C. August 26, 2013) (holding that body cavity searches, including requiring the inmate to spread his buttocks, does not amount to cruel and unusual punishment absent a punitive intent); Peckham v. Wisconsin Dep't of Corrections, 141 F.3d 694 (7th Cir.1998) (strip searches constitutional absent evidence they were performed for purposes of harassment or punishment); Franklin v. Lockhart, 883 F.2d 654 (9th Cir.1989) (approving twice-a-day visual body cavity searches for inmates in disciplinary and administrative segregation); Michenfelder v. Sumner, 860 F.2d 328, 332–333 (9th Cir.1988) (strip searches when entering and leaving cells not excessive even if prisoner escorted from one portion of a unit to the next); Goff v. Nix, 803 F.2d 358, 370–71 (8th Cir.1986) (visual body cavity search of segregation unit inmates before and after going to exercise area to prevent passage of contraband constitutional). As such, Plaintiff fails to make the requisite showing of likely success on the merits. Injunctive relief, such as the issuance of a preliminary injunction, is an extraordinary remedy that may be awarded only upon a clear showing that the plaintiff is entitled to such relief. Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). Therefore, it is recommended that this Motion be denied.

**IV.     MOTION FOR RELIEF**

In this Motion, Plaintiff alleges that Defendants Byrd and Horne have removed legal material

and ask the court to order them to return them. This relief is different from that sought in Plaintiff's Complaint and, thus, is not properly before the court. Accordingly, it is recommended that this motion be denied.

## V.     MOTION FOR SUMMARY JUDGMENT

### A.     Failure to Exhaust Administrative Remedies

Defendants argue that Plaintiff has failed to exhaust his administrative remedies as to the claims raised in his Complaint. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a § 1983 action concerning conditions of his confinement. 42 U.S.C.1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the grievance process within the SCDC. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); see Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir.2001) (exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3 d 718 (7th Cir.2001) (exhaustion required even though Plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) (applying

Booth v. Churner to affirm district court's denial of relief to Plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

> The SCDC's grievance policy was recently delineated in Sweat v. Reynolds as follows:
>
> In order to exhaust the SCDC administrative remedy process, after unsuccessful attempts at informal resolution of the problem(s), (1) an inmate must fill out a Form 10–5 (Step 1 Grievance form) to explain his complaint and give the form to an employee designated by the Warden within fifteen days of the alleged incident; (2) the grievance must then be entered into SCDC's automated system, and the Institutional Inmate Grievance Coordinator ("IGC") notified so that the information in the automated system can be finalized and an attempt to informally resolve it before sending it to the Warden can be made within ten working days from the time the grievance is submitted; (3) the Warden should respond to the inmate in writing within forty days of the Warden's receipt of the Step 1 grievance and then the I GC has five working days to provide the Step 1 response to the inmate; (4) the inmate may then appeal the Warden's response by completing a Form 10–5a (Step 2 Appeal) and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; (5) the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal and the Branch has another five "calendar days" to get the Step 2 appeal to the responsible SCD C official (the Division Director of Operations) for a response; (6) the Division Director of Operations then has sixty days from the day the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally, (7) then there is another five days for the IGC to serve the inmate with the Step 2 response. SCDC Policy/Procedure GA–01.12, at §§ 11, 13.1–13.6 (Oct. 1, 2010). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. Id. at § 13.6.

Sweat v. Reynolds, C/A No. 9:11–1706–MGL, 2013 WL 593660, *4 (D.S.C. February 15, 2013); see also Ceo v. Ozmint, 2006 WL 2850538, at *2 (D.S.C. Sept. 29, 2006) ("This court may take judicial notice of its own records in this prior case.") (citing Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989) ("'[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records'")).

Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir.2005) (inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant); Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

Inmate Grievance Branch Chief Ann Hallman states that all Inmate Grievance Coordinators are trained to perform their duties in accordance with SCDC policy and procedures  Hallman Aff. ¶ 2. Plaintiff submitted Grievance number PCI-2793-12 which was received on October 8, 2012 and dealt with the search procedure in the Special Management Unit on October 3, 2012. Hallman Aff. ¶ 3; Grievance PCI-2793-12 (Ex. A to Hallman Aff.). This matter was forwarded to the Division of Investigations which returned it for normal processing after finding Plaintiff's claims to be without merit. Hallman Aff. ¶ 3. Plaintiff received a Warden's Decision which advised him that SCDC policy provided that SMU inmates would always be strip searched and that the procedure was necessary for the safety of the institution and was in no way sexual harassment. Hallman Aff. ¶ 3. Plaintiff did not file a Step 2 grievance. Hallman Aff. ¶ 3. Because Plaintiff failed to file a Step 2 grievance, summary judgment is appropriate. In the alternative, summary judgment is also appropriate on the merits of Plaintiffs § 1983 claims, discussed below.

**B.     Section 1983**

Plaintiff brings his claims under § 1983, alleging violations of his Fourth, Eighth and Fourteenth Amendment rights. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived

of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

As stated above, the facts in this case are not in dispute. Defendants agree that they perform strip searches on SMU inmates in the manner described by Plaintiff. Thus, the only issue before the court is whether these strip searches rise to the level of a constitutional violation under the Fourth, Eighth, or Fourteenth Amendments.

The Fourth Amendment prevents unreasonable searches of "persons, houses, papers, and effects." U.S. Const. amend. IV. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." Schmerber v. State of California, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). However, the Supreme Court has found that the requirement that maximum security inmates such as Plaintiff undergo regular strip searches fails to raise a constitutional claim. Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (finding that body cavity searches are reasonable under the Fourth Amendment because in prisons the "(s)muggling of money, drugs, weapons, and other contraband is all too common an occurrence"). Thus, Plaintiff's Fourth Amendment argument fails.

The Eighth Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). However, the

Eighth Amendment "does not mandate comfortable prisons," and, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347–49, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); see also Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir.1990). The requirement that maximum security inmates such as Plaintiff undergo regular strip searches fails to constitute cruel and unusual punishment absent any punitive intent. See Nelson v. South Carolina Dep't of Corrections, 2013 WL 4522788, *5 (D.S.C. August 26, 2013) (holding that body cavity searches, including requiring the inmate to spread his buttocks, does not amount to cruel and unusual punishment absent a punitive intent); Peckham v. Wisconsin Dep't of Corrections, 141 F.3d 694 (7th Cir.1998) (strip searches constitutional absent evidence they were performed for purposes of harassment or punishment); Franklin v. Lockhart, 883 F.2d 654 (9th Cir.1989) (approving twice-a-day visual body cavity searches for inmates in disciplinary and administrative segregation); Michenfelder v. Sumner, 860 F.2d 328, 332–333 (9th Cir.1988) (strip searches when entering and leaving cells not excessive even if prisoner escorted from one portion of a unit to the next); Goff v. Nix, 803 F.2d 358, 370–71 (8th Cir.1986) (visual body cavity search of segregation unit inmates before and after going to exercise area to prevent passage of contraband constitutional). Plaintiff fails to present sufficient evidence to show that the strip search at issue in this case was performed for any reason other than security and safety. Therefore, summary judgment is appropriate on Plaintiff's claim for cruel and unusual punishment.

Finally, the Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiff's due process claim fails because he has not shown that he was deprived of life,

liberty, or property by governmental action. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir.1997). To the extent Plaintiff argues that the strip searches were in violation of SCDC policy, it is well-settled that "[a]n agency's violation of its regulations is not unconstitutional unless the regulations are necessary to afford due process." Bowens v. North Carolina Department of Human Resources, 710 F.2d 1015 (4th Cir.1983); see also Garraghty v. Commonwealth of Virginia, 52 F.3d 1274 (4th Cir.1995). Plaintiff fails to make this showing. Thus, summary judgment is appropriate.

### C.     Qualified Immunity

Defendants asserts that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity. "The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing." Akers v. Caperton, 998 F.2d 220, 225–26 (4th Cir.1993). The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official

> must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir.1994) (internal citations omitted), cert. denied, 516 U.S. 824, 116 S.Ct. 89, 133 L.Ed.2d 45 (1995).

As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional rights. However, even if there was a violation, Defendants are entitled to qualified immunity.

### D.   State Law Claims

Plaintiff also asserts state law claims for gross negligence and negligent supervision. However, if the district judge accepts this Report and Recommendation, the original federal jurisdiction claim will be dismissed and the only remaining claim will be Plaintiff's state law claim. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the district judge decline to retain jurisdiction over Plaintiff's state law causes of action.

## VI. CONCLUSION

For the reasons discussed above, it is recommended that Plaintiff's Motion for Preliminary Injunction/Temporary Restraining Order (Document # 28) be denied, Plaintiff's Motion for Relief (Document # 48) be denied and Defendants' Motion for Summary Judgment (Document # 63) be granted as to Plaintiff's federal claims, the court decline to exercise jurisdiction over Plaintiff's state law claims, and this case be dismissed in its entirety.[2]

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 30, 2014
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

[2] If this Report and Recommendation is adopted, all other motions will be moot.